UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WOO YOUNG CHUNG, | ) | CASE NO. 1:13 CV 1354 |
| | ) | |
| Plaintiff, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| RONALD M. BERKMAN, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

Before the Court are Defendants' Partial Motion to Dismiss Pursuant to Federal Civil

Rules 12(b)(1) and 12(b)(6) (**Doc #: 9**) and Plaintiff's Motion to Strike Defendants' Partial

Motion to Dismiss (**Doc #: 10**).  For the reasons set forth below, the Partial Motion to Dismiss

is **GRANTED,** and the Motion to Strike is **DENIED.**

I.       BACKGROUND

*Pro se* Plaintiff Woo Young Chung filed this action under Title VII, 42 U.S.C. § 2000e

*et seq.*, against Cleveland State University ("CSU") and under 42 U.S.C. §§ 1981, 1983 and

1985 against CSU President Ronald M. Berkman, CSU Trustee Robert H. Rawson, Jr. CSU

Vice President of Business Affairs and Finance Stephanie Y. McHenry, CSU Vice President of

Enrollment Services Carmen A. Brown, CSU University Registrar Janet L. Stimple, CSU

Director of Audits Judith A Richards, CSU Manager of Audits John N. Petrus, CSU Associate

Vice President of Finance and Technology Timothy J. Long, CSU Chief Information Officer

William Wilson, CSU Manager of Data and Network Security Michael O. Holstein, CSU Vice

Provost for Academic Planning Teresa C. LaGrange, CSU Director of Institutional Research

Thomas Geaghan, CSU General Counsel Sonali B. Wilson, CSU Assistant General Counsel Kelly M. King, CSU Director of Diversity and Multicultural Affairs Donna M. Whyte, CSU Law Library Director Kristina L. Niedringhaus, and CSU Manager of Labor Relations Denise Mutti.

Plaintiff alleges CSU hired him on January 10, 2011 as the Manager of System and Data Analysis, reporting to the Vice President of Enrollment Services, Corinne Webb.  His job duties included data collection oversight and analysis for reporting, developing and maintaining a database system, implementing technical projects, and consulting on institutional data.  He was assigned three specific projects when he was hired.  First, he was asked to design and implement Dashboard, a computerized system to track the students' academic progress toward graduation. Next, he was assigned to oversee the design and implementation of two programs purchased from outside vendors.  When those projects were ready for interface with the CSU central database, the actual coding tasks were assigned to employees from the Information Services and Technology Department.  He asked to be assigned to those tasks but claims Richards directed the request be denied.  He contends the employees given the coding tasks were Caucasian.

In May 2011, Richards (the Director of Audits) and Petrus (the Audits Manager) raised concerns about Dashboard's security features.  They indicated the program did not properly protect students' social security numbers and credit card information from exposure.  Richards asked Plaintiff to create a security check list to ensure sensitive information was protected; however, Plaintiff told her that her concerns were not valid.  It does not appear that Plaintiff complied with Richard's request.  At that same meeting, Plaintiff expressed disappointment at being excluded from the coding tasks for the other two programs and asked that the

requirements for the programs be published in the future so that minorities could seek out those assignments.

Plaintiff applied for the position of Director of Institutional Research on June 5, 2011. He contends several personnel department employees told him he was a good candidate for the job based on his prior work experience.  Plaintiff learned in September 2011 that another candidate, Thomas Geaghan, was hired for the position.  He contends he was better qualified than Geaghan, who is Caucasian.  He claims that when he asked why he did not get the position, he was told he did not meet the minimum requirements.

Plaintiff claims in July 2011, while working on a program to automate application fee refunds, he noticed accounting transaction balances that did not reconcile with payment records. He claimed a large amount of application fees were being deposited into a University staff member's account rather than the application account.  He reported this to the Director of Administration.  Brown replaced Webb as the Vice President of Enrollment Services in August 2011, and shortly thereafter, Plaintiff reported the accounting irregularities to Brown, suggesting she investigate.

A week later, Richards again raised security concerns about Dashboard and renewed her request for Plaintiff to complete a security check list for the program.  Plaintiff claims no other employees were asked to make a check list for their programs. On August 23, 2011, Plaintiff met with Richards, Brown, Long, LaGrange, Sonali Wilson, Petrus, Holstein, and two students who worked for the Audits Department to discuss the Dashboard security concerns.  Plaintiff denied there was a problem with the program and felt he was the target of the complaints.  Two days later, Richards and Holstein reported to Brown that they believed Plaintiff may be storing

unauthorized information on his computer, which they confiscated and searched. That same day, Plaintiff met with the University's Director of Affirmative Action. He claimed he had been excluded from coding tasks and falsely accused of improperly handling sensitive student data because of his national origin.

Plaintiff received several indications in October 2011 that Brown was not satisfied with his work. He claims she reported he had neglected a project to which he alleges he was not assigned. He contends Brown and Stimple blamed him for delaying the official certification of the graduation reports, but he denied he was responsible for generating those reports. These accusations culminated in a meeting between Plaintiff and Brown in which she told him he needed to work more hours. Brown then told Plaintiff to keep a daily timesheet recording the time he spent each day on each project and to submit it to her at the day's end. He contends no other employees were asked to submit time sheets.

On November 9, 2011, Plaintiff was told his probationary period was being extended for another 60 days. Plaintiff took this information to the Director of Diversity and Multicultural Affairs, Donna Whyte, indicating he intended to file a complaint with the Equal Employment Opportunity Commission ("EEOC"). On November 23, 2011, he submitted a 76 page complaint with15 exhibits to Whyte complaining of discriminatory treatment and asking for a formal resolution.

The Department of Audits completed their internal audit of the Registrar's Office, and Plaintiff claims he noticed the management irregularities he previously reported had not been corrected. He informed Brown and the Director of Administration of his findings.

On November 29, 2011, Brown met with Plaintiff for his performance review.  Brown informed Plaintiff his work was deficient because he did not submit reports for the freshman marketing project.  Plaintiff claimed he had emailed them to her but she denied receiving them.  Brown indicated he refused to work on assigned tasks and did not correct the Dashboard security concerns.  After the meeting, Plaintiff submitted a 54 page addendum to his discrimination complaint to Whyte.  He claims Whyte conducted a flawed investigation and determined the complained-of actions were not motivated by discriminatory animus.  Plaintiff filed an EEOC claim on January 9, 2012.

On February 9, 2012, Brown and Mutti called a meeting with Plaintiff and presented him with an Order of Termination signed by the Vice President of Business Affairs, Stephanie McHenry.  The stated reason for termination was unsatisfactory job performance during his probationary period.   He asked if he could apply for other positions with CSU and was told that while he would not be excluded as a candidate, his personnel file would be made available to any prospective CSU interviewer.

Plaintiff contends he applied for a job as the Assistant Director of Technology Operation at the Cleveland Marshal College of Law on February 20, 2013.  He claims he had an interview with the Director of the Law Library, Kristina Niedringhaus on March 6, 2013; however, the position was offered to another candidate.  Plaintiff contends he had more experience than the Caucasian candidate that was hired.

Plaintiff includes 23 counts for relief in his Complaint.  Count 1, 5, 6, 9, 10, 13, 14, 17, 18, 21 and 22 contain claims against CSU under Title VII, 42 U.S.C. § 2000e.  Counts 4, 8, 12, 16, and 20 contain claims against Berkman, Rawson, Brown, Stimple, McHenry, Richards,

Petrus, Whyte, Wilson, King, and Mutti under 42 U.S.C. § 1981.  Counts 4, 7, 11, 15, and 19

assert claims against Berkman, Rawson, Brown, Stimple, McHenry, Richards, Petrus, Whyte,

Wilson, King, Holstein, LaGrange, Long, Niedringhaus and Mutti for denial of equal protection,

substantive and procedural due process, and retaliation for exercising his First Amendment

rights under 42 U.S.C. § 1983.  He claims Defendants terminated his employment and refused to

hire him for two other positions without providing due process.  He also contends they damaged

his reputation and did not give him the opportunity to clear his name.  He asserts he was denied

coding tasks, and was subjected to additional job performance scrutiny based on his national

origin in violation of the Equal Protection Clause of the Fourteenth Amendment.  Finally, he

asserts Defendants retaliated against him for complaining of disparate treatment and reporting

accounting and record keeping irregularities in the Registrar's Office.  Count 23 contains a

claim for violation of 42 U.S.C. § 1985 against Berkman, Rawson, Brown, McHenry, Stimple,

Richards, Petrus, Long, W. Wilson, Holstein, Whyte, S. Wilson, King, LaGrange,

Neidringhause, and Mutti.

## II.     STANDARD OF REVIEW

### A.     Federal Civil Procedure Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over

the subject matter" of claims asserted in the Complaint.  FED. R. CIV. P. 12(b)(1).  Generally,

FED. R. CIV. P. 12(b)(1) motions fall into two categories: facial attacks and factual attacks.  FED.

R. CIV. P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack

challenges the sufficiency of the pleading itself.  In contrast, a factual attack challenges the

factual existence of subject matter jurisdiction.  *See In re Title Ins. Antitrust Cases*, 702 F. Supp.

2d 840, 884 (N.D. Ohio 2010) (citing *Ohio Hosp. Ass'n v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio. 1997)).  The Plaintiff has the burden of proving subject matter jurisdiction in order to survive a Rule 12(b)(1) motion.  *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir.1996).  Lack of subject matter jurisdiction is a non-waivable, fatal defect.  *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

### B.    Federal Civil Procedure Rule 12(b)(6)

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court's function is to test the Complaint's legal sufficiency.  *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).  The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and recently in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), clarified the law regarding what Plaintiff must plead in order to survive a Rule 12(b)(6) Motion.

When determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accepting all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 556 U.S. at 677-678, further explains the "plausibility" requirement, stating, "a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*.  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment.  FED. R. CIV. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III.     ANALYSIS

### A.     42 U.S.C. § 1981

Defendants contend Plaintiff cannot bring individual capacity claims against them under § 1981 because 42 U.S.C. § 1983 provides the exclusive federal remedy for alleged civil rights violations.  Section 1981 prohibits racial discrimination in the making and enforcement of contracts. *See Runyon v. McCrary*, 427 U.S. 160, 168 (1976).  Section 1983 provides a cause of action against state government employees and officials for violation of civil rights.  When a defendant is a state government official accused of civil rights violations in connection with the making or enforcement of a contract, the statutes overlap, and it was not clear whether a plaintiff could proceed with claims under either or both statutes, or whether the claims had to be filed if at all under § 1983.  The United States Supreme Court answered this question in *Jett v.*

-8-

*Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989), concluding based on the legislative history of both statutes, § 1983 provided the exclusive federal remedy for a claim against a state actor accused of violating rights secured by § 1981. The Court reasoned that Congress created a right of action under § 1981 against private actors partly because there was no other remedy to address civil rights violations of this nature by those individuals. *Id.* at 731-32.

After the *Jett* decision, Congress amended § 1981 to provide:

> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(c). Since then, the circuit courts have split as to whether the amendment created a new private cause of action against state actors, thereby overruling *Jett,* or whether *Jett* is still good law.[1] The Sixth Circuit is among those courts that continue to apply *Jett*. *See McCormick v. Miami Univ.*, 693 F.3d 654, 658-62 (6th Cir. 2012); *Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir. 2008). Consequently, in this Circuit, § 1983 is the exclusive remedy for violations of rights under § 1981 by a state actor. Accordingly, Plaintiff's § 1981 claims against the individual Defendants are dismissed.

---

[1]*See McGovern v. City of Philadelphia*, 554 F.3d 114, 117-18 (3d Cir. 2009); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 463-64 (5th Cir.2001); *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000); *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir. 1995). In contrast, *see Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1205 (9th Cir.1996) ("We hold that the Civil Rights Act of 1991 creates an implied cause of action against state actors under 42 U.S.C. § 1981, and thus statutorily overrules *Jett*'s holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against municipalities for violation of the civil rights guaranteed by 42 U.S.C. § 1981."); *but see Pittman v. Oregon*, 509 F.3d 1065, 1074 (9th Cir. 2007) (holding that § 1981 does not contain a cause of action against arms of the state).

B.    **42 U.S.C. § 1983**

1.    **Title VII is not the exclusive remedy available to Plaintiff**

Defendants first assert Plaintiff's § 1983 claims should be dismissed because they are in essence employment discrimination claims for which Title VII provides the exclusive remedy. In support of this assertion they reference the Sixth Circuit's opinion in *Day v. Wayne Cnty Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir.1984) (finding Title VII "provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII.")

The Sixth Circuit, however, has recently clarified that *Day* involved a unique situation where the plaintiff sued under Title VII and § 1983 for conduct that only violated Title VII. *Toth v. City of Toledo*, 480 F. App'x 827, 831-35 (6th Cir. 2012).  In *Day*, the district court found the plaintiff's employer demoted him in retaliation for filing complaints with the EEOC in violation of Title VII's anti-retaliation provision, but not of the Constitution or another federal statute.  *Id.* at *1.  The court awarded injunctive relief that was permitted by Title VII, but denied the plaintiff's request under § 1983 for damages.  On appeal, the Sixth Circuit affirmed the denial of damages under § 1983, holding Title VII, which did not allow for the damages sought, afforded the sole remedy for the plaintiff.  *Id.*  In *Toth*, the Sixth Circuit clarified that *Day* presented a unique set of circumstances and in general, a plaintiff can bring § 1983 claims for violations of the Constitution's Equal Protection Clause and can also bring Title VII claims for violation of that statute, even if the two types of claims have a common basis in fact.  *Id.* at *2; *see, e.g., Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000); *Annis v. Cnty. of Westchester*, 36 F.3d 251, 255 (2d Cir. 1994) ("We ... hold that an employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone, and is

-10-

not required to plead concurrently a violation of Title VII.").  Contrary to Defendants' assertion, Title VII is not the exclusive remedy to assert claims for denial of Constitutional rights, even if the alleged violations occurred in the context of Plaintiff's employment.

> **2.  Eleventh Amendment does not provide immunity to Defendants sued in their individual capacities.**

Defendants next contend that although Plaintiff asserted claims against them in their individual capacities, they were clearly acting in their official capacities as CSU employees when the alleged violations occurred.  The Eleventh Amendment, therefore, bars these claims.  Citing *Cowan v. University of Louisville*, 900 F.2d 936, 942 (6th Cir. 1990), Defendants argue § 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff.  The Supreme Court, however, effectively overruled *Cowan* in *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("Although one Court of Appeals has endorsed this view, *see Cowan v. University of Louisville School of Medicine*, 900 F.2d 936, 942-943 (6th Cir. 1990), we find it both unpersuasive as an interpretation of § 1983 and foreclosed by our prior decisions.").  The Court concluded state officials, sued in their individual capacities, are "persons" within the meaning of § 1983, and are not entitled to Eleventh Amendment immunity solely by virtue of the "official" nature of their acts.  Consequently, Defendants's assertion of Eleventh Amendment protection for claims against them in their individual capacities is without merit.

> **3.  Plaintiff failed to state a claim for relief under § 1983**

Plaintiff asserts four claims against the individual Defendants under § 1983.  Under the Fourteenth Amendment, he asserts he was denied equal protection, procedural due process, and substantive due process.  Under the First Amendment, he claims Defendants retaliated against

him for exercising his Constitutional right to free speech.  Defendants contend Plaintiff fails to state a claim against them.

### a.　　Parties

Defendants first contend Plaintiff does not identify any specific claims against Geaghan and none are apparent on the face of the Complaint.  Plaintiff asserts Geaghan was hired by CSU to fill a vacant position, for which he also applied.  He indicates Geaghan's duties included certifying reports submitted to the State and the United States Department of Education.  Those reports were the subject of the financial irregularities Plaintiff reported to CSU prior to Geaghan being hired.  Plaintiff indicates Brown used the reports to support Plaintiff's negative performance review.  He therefore concludes Geaghan retaliated against him.

Plaintiff does not specify in the Complaint any claims against Geaghan.  Even if the Court were to accept the retaliation claim based on this statement in the Motion to Strike, the claim would, at best, be nothing more than a legal conclusion unsupported by factual allegations.   A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  Even liberally construed, the Complaint does not contain allegations suggesting a viable claim against Geaghan.

Plaintiff also fails to include factual allegations that reasonably connect Berkman, Rawson, Long, W. Wilson, LaGrange, Whyte, S. Wilson, and King to any of the alleged constitutional violations.  Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the

-12-

alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Plaintiff attempts to include these Defendants by making general allegations that do little more than restate the basic elements of a cause of action.[2] Rule 8's federal notice pleading requirements are not satisfied if Plaintiff only provides labels and conclusions, or a formulaic recitation of the elements of a cause of action unsupported by factual allegations. *Twombly*, 550 U.S. at 555.

Moreover, none of the allegations against these Defendants suggest they personally participated in the actions described in the Complaint. Plaintiff claims Berkman and Rawson should have received reports from S. Wilson and Kelly, counsel for CSU, about Plaintiff's concerns. He does not allege any of these Defendants became personally involved in the dispute. He claims Long, LaGrange, and S. Wilson were present at a Dashboard meeting, but does not indicate how they had further involvement with the actions supporting the asserted violation of Plaintiff's constitutional rights. Plaintiff alleges Whyte investigated his discrimination claim but did not suggest a resolution in his favor. Addressing a grievance is not in itself a violation of constitutional rights. Finally, Plaintiff does not include any allegations against W. Wilson, Chief Information Officer and therefore, does not suggest the manner in which he allegedly violated Plaintiff's rights.

---

[2] For example, he states, "Berkman was implicated in this Court for causing, directing others to cause or engaging in conspiracy to cause the acts that facilitated deprivation of the constitutional rights." (Doc. # 1 at 46, ¶ 169.) Similarly, in count 7, he alleges, "Berkman, Rawson, Brown, Stimple, McHenry, Richards, Petrus, Whyte, Wilson, King, and Mutti...caused, directed to cause, or engaged in conspiracy to cause the deprivation of constitutional and federal rights secured by Title VII, the Free Speech and the Petition Clause under the First Amendment and Equal Protection Clause of the Fourteenth Amendment, and the substantive and procedural due process rights protected by the Due Process Clause under the Fourteenth Amendment." (Doc. #1 at 56, ¶ 197.)

**b.** **First Amendment Retaliation**

Plaintiff fails to state a claim for relief under the First Amendment. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a prima facie case for retaliation, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Whether a public employee's speech is protected by the First Amendment is a question of law, and involves a three-step analysis. *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 350-51 (6th Cir. 2010). First, the Court must determine whether the employee's comments constitute speech "on a matter of public concern." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). If it meets this criterion, the Court must balance the interests of the employee in making such statements with the interest of the employer "in promoting the efficiency of the public services it performs...." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 893 (6th Cir. 2003) (quoting *Pickering v. Bd. of Educ. of Twp. High Sch., Dist. 205*, 391 U.S. 563, 568 (1968)). The Supreme Court further curtailed First Amendment protections when the statements in question are made pursuant to a public employee's official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Matters of public concern generally touch upon political, social, or other important issues of the community. *Connick*, 461 U.S. at 146. "When examining the content of speech,

the proper inquiry is not what might incidentally be conveyed by the fact that the employee spoke in a certain way, but the point of the speech in question." *Taylor v. Keith*, 338 F.3d 639, 645 (6th Cir. 2003).  The Seventh Circuit has characterized the distinction between public and private speech as "the difference between an employee complaining about matters private to himself, such as whether he was being paid enough or given deserved promotions, as compared to an employee who is engaged in whistle blowing or otherwise going public with matters in which the public might be expected to take an interest." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir.1995) (citing *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir. 1994)).

Here, Plaintiff describes two incidents that he believes to have prompted retaliation.  He claims he complained to his supervisor that he was denied programming duties and his work was scrutinized solely on the basis of his national origin.  Plaintiff also indicates he complained on several occasions to his supervisors and others at CSU about irregular financial accounting and record-keeping within the registrar's office.  While the first type of speech concerns matters specifically related to Plaintiff's job performance and duties and therefore are not matters of public concern, the second type of speech may be considered whistle blowing and would potentially be the type of speech in which the public might take an interest.

While the latter type of speech may be considered to be a public concern, the statements in question were made pursuant to Plaintiff's official duties. *Garcetti*, 547 U.S. at 421.  For a public employee's statements to receive First Amendment protection, the public employee must speak as a citizen and address matters of public concern. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007).  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."

-15-

*Garcetti*, 547 U.S. at 421. Therefore, in reviewing a public employee's statement under *Garcetti*, the Court must consider both its content and context, including to whom the statement was made, to determine whether the Plaintiff made the statement pursuant to his individual duties. *Weisbarth*, 499 F.3d at 545; *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

In this case, Plaintiff alleges he was developing a program to automate the fee refund system when he noticed irregularities in accounting transaction balances, which did not reconcile with payment records. He also noted record keeping irregularities in reports concerning student retention. He reported these discoveries to his supervisor and to the individuals supervising the departments in question so that CSU could correct these situations. At those times, Plaintiff was not acting as a concerned citizen but rather as an employee performing duties to which he was assigned and carrying out the functions of his position. His speech is therefore not protected by the First Amendment.

### c. Due Process

Plaintiff also contends he was denied due process, both procedural and substantive. He indicates in a cursory manner that he was dismissed from his job without being provided a proper opportunity to clear his name. He further contends he was deprived of job opportunities as the Director of Institutional Research and as an assistant in the law library without having the opportunity to address negative information about him in his personnel file.

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process

Clause bars "certain government actions regardless of the fairness of the procedures used to implement them" *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the government of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit under § 1983.  *Id*.

The Due Process Clause has a procedural component and a substantive one.  The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power.  A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest.  It simply requires that the government provide "due process" before making such a decision.  *Howard v. Grinage*, 82 F.3d 1343, 1349-53 (6th Cir. 1996).  The goal is to minimize the risk of erroneous deprivations, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process.  *Id*.  Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner."  *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983).  Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing.  *See Id*.  The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent  the arbitrary use of government power.  *Howard*,  82 F.3d at 1349.  Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient.  *Howard*,  82 F.3d at 1350.  Although the existence of a

-17-

protected liberty or property interest is the threshold determination, the focus of this inquiry

centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental

power from being used for purposes of oppression," regardless of the fairness of the procedures

used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986).  Substantive due process serves as a

vehicle to limit various aspects of potentially oppressive government action.  *Id.*  It serves as a

check on legislation that infringes on fundamental rights otherwise not explicitly protected by

the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental

right;" or as a limitation on official misconduct, which although not infringing on a fundamental

right, is so literally "shocking to the conscious," as to rise to the level of a constitutional

violation.  *Howard*,  82 F.3d at 1349.

### 1.        Procedural Due Process

As an initial inquiry, Plaintiff must demonstrate he possessed a constitutionally-

protected property or liberty interest.  The Constitution does not create or define the property

interests it protects. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).  Rather, whether a

plaintiff holds a protected property interest depends on "existing rules or on understandings that

stem from an independent source, such as state law ...."  *Seguin v. City of Sterling Heights*, 968

F.2d 584, 590 (6th Cir.1992) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Generally, to possess a constitutionally protected interest, a person must have "have more than

an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He

must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.  In the

employment context, "[a] property interest can be created by a state statute, a formal contract, or

-18-

a contract implied from the circumstances." *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 566 (6th Cir. 2004).  If a protected property interest exists, due process is satisfied if the employee is given notice of the charges against him, an explanation of the employer's evidence, and a chance to present his side of the story.  *Id.*  A public employee does not have a property interest in continued employment, however, when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause. *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989).

In counts 11, 15, and 19, Plaintiff bases his due process claims on jobs with CSU for which he applied but was not hired.  While he unilaterally expected to receive offers of employment for those positions, he did not have a legitimate claim of entitlement to those jobs. He, therefore, did not have a protected property interest in them, and was not denied due process when he was not hired.

In count 3, Plaintiff claims he was terminated from his job with the University without a proper hearing to clear his name.  Plaintiff does not provide sufficient information about his employment to indicate whether he was an "at will" employee or whether he had a protected property interest in continuing his public employment.  In fact, the stated reason for his termination was unsatisfactory job performance during his probationary period.  Courts have held that probationary public employees do not possess a property interest in continued employment and, thus, have no right to procedural due process before their employment may be terminated.  *See, e.g., Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011) (citations omitted); *Febus-Cruz v. Sauri-Santiago*, 652 F.Supp.2d 140, 152 (D.P.R. 2009) (holding that employee undergoing a probationary period had no property right to continued employment and, thus, had

no procedural due process right to notice and a pre-termination hearing); *Jolly v. Listerman*, 672 F.2d 935, 941 (C.A.D.C. 1982) ("just as there is generally no protected interest in keeping a particular job beyond a probationary period, there is no recognized property right in a mere chance or expectation of being hired (or . . . rehired) by a particular employer or to a particular position").

Nevertheless, "a person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment." *Chilingirian*, 882 F.2d at 205. "[W]hen a 'nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.'" *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (quoting *Chilingirian*, 882 F.2d at 205). To show he was deprived of this liberty interest, Plaintiff must show: (1) the stigmatizing statements were made in conjunction with his termination; (2) the stigmatizing statements consist of more than the employer's allegations of  improper or inadequate performance, incompetence, neglect of duty or malfeasance; (3) the stigmatizing statements were made public; (4)  the charges made against him were false; and (5) the public dissemination was voluntary. *Id.* "If the above requirements are met, the employee is entitled to notice and an opportunity to be heard through a name-clearing hearing, when plaintiff has made a request for such a hearing." *Id.* (citations omitted).  It is the denial of the name-clearing hearing after plaintiff requests it that causes the deprivation of the liberty interest without due process." *Quinn*, 293 F.3d at 320 (citing *Brown v. City of Niota*, 214 F.3d 718, 723 (6th Cir. 2000)).

Here, Plaintiff has not alleged facts demonstrating deprivation of a protected liberty interest.  The stigmatizing statements to which Plaintiff objects concern only the substandard performance review he received from Brown.  She cited to work Plaintiff had not completed, and inadequate performance.  Although Plaintiff disagrees with her assessment, these comments do not deprive Plaintiff of a protected liberty interest.

## 2.     Substantive Due Process

Plaintiff's substantive due process claim is also subject to dismissal.  Due process claims of this nature involve official acts that cause a deprivation of a substantive fundamental right.  *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993).  In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience."  *See United States v. Salerno*, 481 U.S. 739, 746 (1987).  These actions are unconstitutional regardless of the procedural protections provided.  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent.  *Id*. at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id.*

Plaintiff does not allege he was deprived of a fundamental right and his substantive due process claims must therefore be based on conduct alleged to be so severe that it shocks the conscience.  He does not explain the basis for these claims with clarity.  To the extent he is claiming Defendants treated him harshly, terminated his employment, and denied him other positions within CSU because he filed complaints, his claims are without merit.  Where a

specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  Plaintiff asserted a substantially similar claim under the First Amendment.  His substantive due process claims would be redundant to those claims.

To the extent Plaintiff is alleging Defendants generally treated him poorly, he fails to state a claim upon which relief may be granted.  He does not allege facts that reasonably suggest any of the Defendants acted in a manner so severe and disproportionate to the need presented, and with such an abuse of authority that their behavior went beyond the scope of a civil tort to the deprivation of a constitutional right.  His substantive due process claims are therefore dismissed.

### 3.      Equal Protection

Plaintiff's final § 1983 claims assert denial of equal protection.  The Equal Protection Clause prohibits discrimination by government actors that either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.

Once again, Plaintiff does not adequately set forth the factual basis for his claims.  He indicates Brown wrote a negative performance review and he was terminated from his employment based on his national origin.  He contends he was denied two coding opportunities, which were awarded to Caucasian employees and suggests he was required to do a security check list when other Caucasian employees were not asked to do so for their own programs.  None of these allegations, however, suggest disparate treatment.

In order to sustain an equal protection claim, Plaintiff must allege facts which show these particular Defendants treated him differently than others who are similarly situated.  To be similarly situated, the other employee must "deal[] with the same supervisor, be[ ] subject to the same standards and engage in the same conduct without such differentiating or mitigating circumstances that would distinguish [his] conduct or the employer's treatment of [him] for it." *Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).  With respect to the coding opportunities, the employees given the tasks were assigned to Information Services and Technology and did not have the same job as Plaintiff.  Furthermore, while he was the only employee required to create a check list, he does not allege the other employees developed programs with similar security concerns but were treated differently.  Absent an allegation of disparate treatment between similarly situated employees, Plaintiff cannot state a claim for denial of equal protection.

-23-

C.    42 U.S.C. § 1985

Finally, Defendants argue Plaintiff's claims under § 1985 must be dismissed based on the Intra-Corporate Conspiracy Doctrine.  Plaintiff responds that his case falls within the "scope of employment" exception to the Doctrine.

To state a claim for conspiracy to deprive a person of equal protection under the law pursuant to § 1985 , a plaintiff must allege facts to demonstrate: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir. 2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29 (1983)).  The acts that allegedly "deprived the plaintiff of equal protection must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)).

The Intra-Corporate Conspiracy Doctrine recognizes that there must be at least two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.  *Upton v. City of Royal Oak*, 492 F. App'x 492, 503-05 (6th Cir. 2012) (citing *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991).  The Intra-Corporate Conspiracy Doctrine therefore holds that a cause of action does not exist for civil conspiracy between a corporation and its agents acting within the scope of their employment. *See id.* (citing *Hull*, 926 F.2d at 509-10).  Plaintiff incorrectly states that "scope of employment" is an exception to the Doctrine.  Instead, it is a requirement of the Doctrine that is

-24-

applied to distinguish between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place.  *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994).  Plaintiff's conspiracy claims are based solely on decisions made within CSU by CSU personnel to terminate his employment.  These were not private acts done by people who happened to work in the same place.  The Intra-Corporate Doctrine applies, and Plaintiff fails to state a claim for relief under § 1985.

IV.     **CONCLUSION**

        Accordingly, Defendants' Partial Motion to Dismiss (**Doc #: 9**) is **GRANTED**, and Plaintiff's Motion to Strike (**Doc #: 10**) is **DENIED**. Because no claims remain against the individual Defendants, they are dismissed from this action.  The case shall proceed solely on Plaintiff's Title VII claims against Cleveland State University.

        **IT IS SO ORDERED**.


                                            _/s/ Dan A. Polster    August 26, 2013_
                                            **Dan Aaron Polster**
                                            **United States District Judge**